

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

February 18, 2026



**BY ECF**

The Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

> **Re:    *United States v. Ray Roberto Carrion Susana*, 24 Cr. 432 (KPF)**

Dear Judge Failla:

The Government respectfully opposes defendant Ray Roberto Carrion Susana's *pro se* motion seeking early termination of his term of supervised release (the "Motion"), filed December 10, 2025 (24 Cr. 432, Dkt. 4). The defendant has served approximately 20 months of his 30-month term of supervised release, which began in approximately July 2024 upon his release from prison following the revocation of his initial term of supervised release. As detailed below, the defendant has violated prior terms of supervised release and has nonetheless repeatedly requested early termination of his supervision, which have all been denied. The Government has discussed the Motion with the defendant's Probation Officer, Alexandria Hirsch, who supports early termination. Nevertheless, for the reasons set forth below, the Motion should be denied.

## I.    Background

On August 5, 2020, a grand jury sitting in the Northern District of West Virginia returned an indictment charging Carrion Susana with possessing five or more false identification documents with intent to use them unlawfully, in violation of 18 U.S.C. §§ 1028(a)(3) and (b)(1)(B), and possessing a document-making implement and authentication feature with intent to produce false identification documents, in violation of 18 U.S.C. §§ 1028(a)(5) and (b)(1)(C). (Dkt. 1).[1] On May 4, 2021, a grand jury sitting in the Northern District of West Virginia returned a superseding indictment (the "Superseding Indictment") charging Carrion Susana with three additional charges: conspiracy to commit mail fraud, in violation of 18 U.S.C. §§ 1341 and 1349; mail fraud, in violation of 18 U.S.C. § 1341; and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). (Dkt. 48).

---

[1] Unless otherwise noted, the docket numbers cited herein refer to the Northern District of West Virginia docket where this case originated, *United States v. Carrion Susana*, No. 20 Cr. 34 (TSK-MJA) (N.D.W.V.).

The basis for these charges was a traffic stop that occurred in West Virginia on or about April 27, 2019, during which law enforcement found Carrion Susana in possession of at least five driver's licenses bearing the name of a real person but the photograph of Carrion Susana, as well as a laptop computer containing a document-making software program and multiple holograms and seals that Carrion Susana intended to use to make false identification documents. (*See generally* Dkt. 48).

On June 13, 2022, following a guilty plea to Count Three of the Superseding Indictment (*i.e.*, possession of five or more false identification documents with intent to use unlawfully), the Honorable Thomas S. Kleeh, Chief District Judge for the Northern District of West Virginia, sentenced Carrion Susana to time served of approximately three months of pretrial detention to be followed by a 36-month term of supervised release. (Dkt. 138).

On April 12, 2023, approximately ten months into his term of supervised release, Carrion Susana mailed a letter to the Court, which the Clerk docketed on April 17, 2023, asking that his supervised release be terminated approximately two years and two months early. (Dkt. 142). According to Carrion Susana, he had not committed any violations while on supervision and faced difficulty accomplishing visitation with his daughter and out-of-district travel requirements for work. (*See id.*). The Government opposed Carrion Susana's request for early termination of supervised release, and on May 3, 2023, Chief Judge Kleeh denied Carrion Susana's request. (Dkt. 145). Approximately four months later, on August 25, 2023, Carrion Susana mailed another letter to the Court, which the Clerk docketed on August 29, 2023, again asking for early termination of his 36-month term of supervision citing the same reasons that Chief Judge Kleeh deemed insufficient in May 2023. (Dkt. 146). The Government opposed Carrion Susana's second request for early termination of supervised release, and on October 10, 2023, Chief Judge Kleeh again denied Carrion Susana's request. (Dkt. 150).

Although Carrion Susana in his letters to the Court represented that he had not committed any violations while on supervised release, that was not so. Indeed, for approximately 12 months, Carrion Susana had not been residing at his approved place of residence in the Middle District of Pennsylvania, but instead had been residing in Alexandria, Virginia without approval from the U.S. Probation Office (the "Probation Office"). (Dkt. 153). On October 25, 2023, Chief Judge Kleeh granted a Petition for Warrant or Summons for Offender Under Supervision, which recommended that Carrion Susana's supervised release be revoked due to his residing outside of the Middle District of Pennsylvania without permission. (*Id.*). On December 11, 2023, Chief Judge Kleeh granted an Amended Petition for Warrant or Summons for Offender Under Supervision, which added violations for failing to return to the Middle District of Pennsylvania in November 2023 or report to or communicate with the Probation Office by December 2023. (Dkt. 164).

On January 26, 2024, due to the multiple violations discussed *supra*, Chief Judge Kleeh revoked Carrion Susana's supervised release and sentenced him to six months' imprisonment to be followed by 30 months of supervised release. (Dkt. 178). On June 28, 2024, Carrion Susana completed his term of imprisonment. (Dkt. 184). However, by July 1, 2024, Carrion Susana presented the Probation Office with another issue when he refused to reside at a particular location in West Virginia and refused to provide the Probation Office with a residence to investigate. (*Id.*). On July 2, 2024, Chief Judge Kleeh modified Carrion Susana's conditions of release to place him under supervision with location (or GPS) monitoring for the entirety of his supervision period,

which was to take place in the Southern District of New York at Carrion Susana's request. (Dkt. 187).

On July 19, 2024, jurisdiction was transferred to the Southern District of New York. (Dkt. 190). On September 15, 2025, Carrion Susana submitted yet another request (his third) for early termination of his supervised release to the Northern District of West Virginia, which the Clerk docketed on September 18, 2025. (Dkt. 192). In that motion, Carrion Susana argued that he had completed half of his supervision period and again argued that he had complied with his terms of supervision and had out-of-district travel requirements that were impeded by supervision. (*Id*. at 1-2). Carrion Susana further stated that he is preparing to work "as a real estate investor across different states in the U.S. and to expand into international business ventures abroad," and expressed his desire to "move out of the country and travel frequently to the United States for work opportunities." (*Id*. at 2). The Government opposed Carrion Susana's third request for early termination of supervised release, and on December 3, 2025, Chief Judge Kleeh denied Carrion Susana's motion as moot for lack of jurisdiction. (Dkt. 196).

On December 9, 2025, Carrion Susana transmitted the instant Motion for early termination of supervised release to the Southern District of New York, which was docketed on December 10, 2025. The Motion largely raises the same arguments that were made in Carrion Susana's previous motions.

## II.   Applicable Law

The Court may terminate a term of supervised release "at any time after the expiration of one year of supervised release" if, after revisiting the relevant factors set out in 18 U.S.C. § 3553(a), "it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1).

This provision is to be invoked "[o]ccasionally," and exists "in order to account for new or unforeseen circumstances" that would "render a previously imposed term or condition of release either too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a)." *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997). While these circumstances may include "exceptionally good behavior by the defendant," *id.*, "good conduct alone is not a reason for early termination," *United States v. Pena*, No. 08 Cr. 578 (JGK), 2022 WL 2733871, at *1 (S.D.N.Y. June 27, 2022) (denying motion that failed to identify any harms that would be redressed by early termination of supervised release).

## III.   Discussion

The defendant's Motion does not set forth sufficient grounds to justify the requested early termination of supervised release or disturb Chief Judge Kleeh's judgment that 30 months of supervised release was appropriate given the defendant's violation of multiple conditions of his initial term of supervision. The Motion should be denied for several reasons.

*First*, the Section 3553(a) factors—in particular, the nature and circumstances of the offenses and the need to afford adequate deterrence to criminal conduct—counsel against early termination of supervised release here. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(B). Carrion Susana

was convicted of a serious crime of possessing at least five false identification documents with the intent to use them unlawfully. (*See* Dkts. 48 & 138). Far from a victimless offense, Carrion Susana used the personal information of at least five individuals to create fake driver's licenses for his own benefit. Recognizing the seriousness of the defendant's offense, Chief Judge Kleeh imposed a sentence of time served to be followed by 36 months of supervised release. But rather than serve his supervision term without issue, Carrion Susana failed to reside at his approved residence in Pennsylvania and instead relocated to Virginia for approximately 12 months without the Probation Office's approval. As a result, Carrion Susana is now serving—and now seeks early termination of—his second term of supervised release. Carrion Susana has an undeniable history of failing to comply with the terms of supervised release, thereby breaching the Court's trust notwithstanding his prior representations of compliance to Chief Judge Kleeh and his recent apparent compliance with the terms of supervision. Carrion Susana's completion of the full term of supervision will assist in deterring him from engaging in new criminal conduct, and, should he violate the terms of his supervised release, permit the Court to hold him accountable as necessary.

The November 2025 version of the U.S. Sentencing Guidelines is not to the contrary. Section 5D1.4(b) of the new policy statement reads, in relevant part:

> EARLY TERMINATION.—Any time after the expiration of one year of supervised release and after an individualized assessment of the need for ongoing supervision, the court may terminate the remaining term of supervision and discharge the defendant if the court determines, following consultation with the government and the probation officer, that the termination is warranted by the conduct of the defendant and in the interest of justice. *See* 18 U.S.C. § 3583(e)(1).

U.S. Sentencing Guidelines Manual § 5D1.4(b) (U.S. Sentencing Comm'n 2025).

This provision, and the accompanying subsections (a) and (c), memorialize in the Guidelines what has long been statutory law—namely, that district courts may, consistent with the Section 3553(a) factors, terminate, extend, or modify a term or conditions of supervised release. *See* 18 U.S.C. § 3583(e). The current version of the Guidelines does not alter the circumstances under which early termination may be justified and instead maintains the status quo that early termination is the exception that may be appropriate where "new or unforeseen circumstances" arise. *Lussier*, 104 F.3d at 36. Moreover, the Application Notes that accompany the new policy statement lists several factors that "the court may wish to consider" when deciding whether to terminate supervised release early, including "any history of court-reported violations over the term of supervision." U.S.S.G. § 5D1.4 App. Note 1(B)(i). As discussed *supra*, Carrion Susana seeks early termination of a term of supervised release that was imposed precisely because he grossly violated the terms of his initial period of supervision, in breach of the Court's trust. Under the current version of the Guidelines, early termination is not warranted.

*Second*, while the Government recognizes that the defendant's successful compliance with the conditions of his current term of supervised release is commendable, that does not constitute "new or unforeseen circumstances" that might call into question the appropriateness of his sentence. *Lussier*, 104 F.3d at 36. "A defendant's faithful compliance with the terms of his supervision does not, by itself, entitle him to modification or termination of his term of supervised release." *United States v. Flores*, No. 99 Cr. 1110 (RWS), 2010 WL 2573385, at *1 (S.D.N.Y. June 28, 2010).

Indeed, courts in this District routinely decline to terminate supervised release based solely on compliance with supervision. *See, e.g.*, *United States v. Mejia*, No. 13 Cr. 617-1 (KPF), 2025 WL 3779083, at *2 (S.D.N.Y. Dec. 30, 2025); *United States v. Quinones*, No. 19 Cr. 87 (JGK), 2023 WL 6959075, at *1 (S.D.N.Y. Oct. 9, 2023); *United States v. Wheeler*, No. 1:20 Cr. 492 (GHW), 2023 WL 4561591, at *2 (S.D.N.Y. July 17, 2023); *United States v. Weiss*, No. 21 Cr. 457 (PMH), 2022 WL 3214914, at *3 (S.D.N.Y. Aug. 9, 2022); *United States v. Gonzales*, No. 94 Cr. 134 (JSR), 2015 WL 4940607, at *1 (S.D.N.Y. Aug. 3, 2015); *United States v. Rasco*, No. 88 Cr. 817 (CSH), 2000 WL 45438, at *2 (S.D.N.Y. Jan. 19, 2000); *United States v. Medina,* 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998). Put simply, "compliance of this type is expected of everyone on supervision" and does not warrant early termination. *Mejia*, 2025 WL 3779083, at *2. In considering Carrion Susana's first and second requests for early termination of supervised release, Chief Judge Kleeh rejected Carrion Susana's arguments based on his purported compliance with his terms of supervision and denied his requests. Carrion Susana's fourth request for early termination should similarly be denied.

*Third*, beyond general compliance with the conditions of his supervised release, Carrion Susana's principal argument is that early termination will allow him to move abroad where, the defendant represents, he will "pursue long-term personal and professional opportunities." (Mot. at 3). Carrion Susana also wants to pursue "real-estate investment and business activities in multiple states," and argues that supervision makes it impossible to complete his relocation abroad or travel interstate. (*Id*.). Those are not sufficient justifications for early termination. As an initial matter, "terminating the defendant's supervised release entirely is not necessary to accommodate these concerns. If the defendant wishes to work in [another state], he may seek to extend the limits of his supervision, or he may request a transfer of his supervision to another district." *United States v. Pestana*, No. 08 Cr. 581 (JGK), 2023 WL 2898662, at *3 (S.D.N.Y. Apr. 11, 2023). What is more, Carrion Susana's desire to pursue business opportunities interstate and abroad "ought to be viewed as cause for continued supervision, given the specifics of his offense[] of conviction," *Mejia*, 2025 WL 3779083, at *3, which involved the possession of false identification documents. In any event, Carrion Susana has only approximately ten months left of supervision, and he should be required to complete the full 30-month term of supervised release to which Chief Judge Kleeh sentenced him.

Furthermore, courts within this District routinely find that potential out-of-district employment or work-related travel do not warrant early termination of supervised release. *See id.* (denying motion for early termination where defendant sought to work in interstate trucking); *Pestana*, 2023 WL 2898662, at *3 (denying request for early termination where defendant sought to move to Florida to "accept certain employment offers there"); *Pena*, 2022 WL 2733871, at *1 (denying request for early termination where defendant asserted "his occupation requires him to travel around the country"); *Gonzales*, 2015 WL 4940607, at *1 ("Gonzalez claims that his supervised release is cumbersome because it requires him to receive approval before he can attend out-of-state, employer-sponsored training programs. . . . However, mere inconvenience does not rise to the level of new or unforeseen circumstances that would warrant early termination."). And Carrion Susana's desire to travel out-of-district, without restriction, to visit with family or pursue work-related ventures certainly does not constitute grounds for early termination. *See United States v. Jimenez*, No. 04 Cr. 329 (JGK), 2010 WL 6385382, at *1 (S.D.N.Y. Mar. 24, 2010) (denying motion for early termination of supervision where the defendant "expresse[d] a desire to visit his

ailing mother in the Dominican Republic," and explaining that "[t]he defendant should seek permission from his probation officer" and then "bring the issue to the attention of the Court" if necessary); *United States v. Lai*, 458 F. Supp. 2d 177, 177 (S.D.N.Y. 2006) (denying motion for early termination based on defendant's declining health and desire to travel to be with family). To the extent Carrion Susana seeks to travel, he can seek permission from the Probation Office in compliance with his supervised release conditions.

## IV.      Conclusion

For all of the reasons stated above, the Court should deny the defendant's request for early termination of supervised release.

Respectfully submitted,

JAY CLAYTON
United States Attorney
Southern District of New York

by: _____
Adabelle U. Ekechukwu
Assistant United States Attorney
(212) 637-1944

CC:    Defendant Ray Roberto Carrion Susana, *pro se* (by certified mail)
          U.S. Probation Officer Alexandria Hirsch (by email)

The Court has reviewed the parties' submissions, as well as materials from Mr. Carrion's prosecution file, including his Presentence Investigation Report.  For substantially the reasons set forth in the Government's opposition (Dkt. #7), the Court DENIES Mr. Carrion's motion for early termination of supervised release, without prejudice to its renewal at a later point in Mr. Carrion's supervision.

The Court acknowledges that it has the authority under 18 U.S.C. § 3583(e)(1) to terminate Mr. Carrion's term of supervised release early. The Court has also spoken with Mr. Carrion's supervising Probation Officer, who supports his motion and who relates that there have been no issues with his supervision.  The Court commends Mr. Carrion for his efforts to return to the community as a law-abiding, productive member. However, in light of the circumstances of Mr. Carrion's conviction, his poor initial adjustment to supervision, and, most recently, his contemplated new business ventures, the Court believes that Mr. Carrion, and society, are better served with continued supervision. The Court believes that Mr. Carrion and his Probation Officer can work together to ensure that his conditions of supervised release do not hamper, unduly or improperly, his efforts at rehabilitation.

The Clerk of Court is directed to terminate the motion pending at docket entry 4 and to mail a copy of this Order to Mr. Carrion at the following address: Ray Carrion, 260 Audubon Ave, Apt 24H, New York, New York 10033

SO ORDERED.

Dated: New York, New York
       March 2, 2026

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE